PROVOSTY, J.
The information against the accused charges him in one count with having entered a railroad car in the nighttime without breaking, with intent to steal, which is made a crime punishable by imprisonment, with or without hard labor, by Act 47, p. 40, of 1890, and in a second count, with having, after having so entered said car, stolen then and there two sacks of flour—
“the said flour at the time being then and there in transit and in the legal custody of the Louisiana Western Railroad Company.”
[1] The following extract from the brief of the learned counsel for accused very succinctly states the matter covered by bills of exceptions Nos. 1, 2, and 3:
“C. A. Eutes, the first witness sworn by the state, testified on his direct examination that he was a detective in the employ of the Southern Pacific Railroad Company, the railway system of which the Louisiana Western Railroad Company is a part; that he had investigated the matter of the robbery of the particular car defendant was charged with entering; that he had, on the day previous to the night when defendant is charged with having entered the car in question and stolen therefrom two sacks of flour, found the car to be sealed, and the seal to be intact; that the car in question was attached to a train of 40 cars; that the flour in the car was of a brand known as the “White Elephant” flour; that witness, in the course of his investigation, had been unable to find that particular brand of flour on sale in any of the stores in the city of Lafayette, but that he had only visited six out of seven stores in the said city dealing in flour, and that so far as he knew there might be other stores in the city where flour was sold. He also testified that the accused had made a confession to him and to Sheriff Louis Lacoste.”
The said bills of exceptions 1, 2, and 3 were taken to the rulings of the court in refusing to allow the said witness Eutes to answer, on the cross-examination, the following questions:
(1) “Q. You have testified that the seal of this particular car was examined by you, as a detective for the Southern Pacific Railroad Company, on the evening of the day before the alleged crime was committed, and you have stated that the seal of the car was intact. Now, I ask you why you did not cause the arrest of this party and of the other parties arrested in connection with this alleged crime on the charge of breaking as well as entering the box car in question ?”
*587 (2) “Q. Is it not a part of your official duty, as detective of the Southern Pacific Railroad Company, to cause the arrest of persons whom you suspect to have stolen the property of the company, and, if you answer in the negative, I ask you what are your official duties, then, as the detective of the Southern Pacific Railroad Company ?”
(3) “Q. You have testified that you are a detective of the Southern Pacific Railroad Company, and that the brand of flour taken from the car was the “White Elephant” brand, and you have testified that you visited six or seven stores in the town of Lafayette with a view of ascertaining whether they handled the “White Elephant” flour. Now, I ask you if these six or seven stores that you visited are the only stores in the city of Lafayette handling flour, and if they are not why did you not, as a detective seeking to ferret out this crime, visit all the stores in the town of Lafayette to ascertain whether or not any of them dealing in flour handled this particular brand of flour?”
The complaint is that by these rulings the accused was denied the right of cross-examination. But the materiality of this cross-examination is not shown. Its object is said to have been to bring out and expose the bias and interest of the witness. But it is not suggested how the conduct of the witness in not causing the parties in question to be prosecuted for breaking as well as for entering, or in not having visited all the stores in Lafayette selling flour, instead of only six or seven of them, could possibly show either bias or interest on his part, and, after the witness had testified that he was a detective in the employ of the railroad company, and that he had investigated the robbery in question, it is not apparent of what utility the question as to what are his functions as detective, and as to whether they include the duty of causing the arrest of culprits, could be for the purpose of showing bias or interest. Whatever bias or interest may be deduced from the facts inquired about was already fully shown by the fact itself of being an employed detective. The learned trial judge was of opinion that.the cross-examination was a mere wasting of the time of the court, and he appears to us to have been entirely right.
[2] The subject-matter of bill of exceptions No. 5 is stated in the brief of counsel for accused, as follows:
“Bill of exceptions No. 5 relates, in a measure to the same subject-matter as that contained in bill numbered 4.
“Louis Lacoste, sheriff of the parish of Lafayette, as a witness for the state, was asked on cross-examination the following question:
“ ‘Q. I hold in my hand, Mr. Lacoste, an affidavit sworn to by you on the 24th day of March, 1913, before R. W. Elliott, Judge of the city court of the city of Lafayette, in which you charge Jos. Guidry, John Gary, Oscar Chiasson, Edgar Richard, Nathan Stoner, Jos. Maxille, John Natcisse, and Eugene Logan with breaking and entering into a box car, P. F. E. No. 2951, and did steal and carry away 2,760 pounds of flour, valued at $82.80. Now I ask you if the railroad detective, Mir. Eutes, who has just left the witness stand, was not with you when you appeared before Judge Elliott to make this affidavit?’
“The court, in disallowing the answering of the question by the witness, stated that, if the attorney for defendant would propound his question in the following language, he would permit the witness to answer it, viz., ‘whether or not Mr. Eutes was with him when he made 'the affidavit,’ but refused to allow the question to be put and answered in the form used. Defendant argued the admissibility of the evidence on the ground as having for its purpose:
“First. To show as a part of the res gestae that other persons than the defendant were accused of entering box car No. P. F. E. 2961 on the night of March 20, 1913* on the same occasion the accused is charged with having entered the box car and stolen the flour.
“Second. For the purpose of showing as a matter of defense that all ‘the flour might have been stolen by the other persons who had pleaded guilty, as stated by the court, and that the fact of other persons having been in that car on this particular night is a relevant fact for the purpose of establishing that it is possible that those other persons were the sole perpetrators of the crime.
“Third. For the purpose of impeaching the testimony of the witness Eutes, the railroad detective.
“Fourth. For the reason that defendant considers the affidavit and warrant issued in this case to be a part of its record; that the affidavit, the warrant, the information, and the minutes of the court constitute the record of the case, and are admissible in evidence as forming part of such record.
“Fifth. For the purpose of laying a basis for the introduction of the record of the case in evidence.
“Sixth. Because it is relevant to the issues of this case whether or not other parties were accused of the commission of the same at the same time and at the same place as the defendant.”
*589 It is not suggested, and we fail en-' tirely to see, how the fact of the witness Eutes having, or not, been with the sheriff, when the sheriff made the affidavit in question, could affect the ease one way or the other; hence, this bill fails to show reversible error, even if error there was.
[3] The subject-matter of bill of exceptions No. 4 is stated in the brief of counsel for accused, as follows:
“Bill of exceptions No. 4 was taken to the ruling of the court refusing to permit the same state witness Eutes, the defective, to answer the following question:
“(1) ‘Q. How many persons were charged with having entered in the nighttime this particular. box car on the occasion when this defendant is charged with having entered that car?’
“This witness had testified that other persons had pleaded guilty to the charge of entering this particular box car during the night when the defendant was charged with having entered the same, and the question was put for the purpose of proving by the witness how many persons were so charged. The fact that other persons were concerned in the robbery of the particular car on the night in question, and that they pleaded guilty to entering said car and larceny of flour therefrom, and the testimony of this witness with reference thereto is conceded by the court to be true in the note attached to bill of exceptions numbered 5. ' We contend that the testimony sought to be elicited is admissible as part of the res gestee, and also as a relevant fact in connection with the possibility of these other persons having stolen all the flour missing from the car, and it would go to substantiate the testimony of -the defendant, in which he denied the confession in the terms testified to by the witness Eutes; the defendant having sworn that he did not enter the car at all on the night in question, but that he obtained the two sacks of flour from Eugene Logan, one of the parties who pleaded guilty to having entered the car and stolen therefrom flour, and that he so told the witness Eutes, as well as the sheriff, Louis Lacoste, on the occasion when Lacoste and Eutes claimed to have obtained a confession from him.”
We fail entirely to see how the “possibility” of these other persons alone having been the thieves could have been made any more manifest by the answer to this question than it was already. And we fail entirely to see how the answer to this question could have gone towards substantiating the prisoner’s denial of his having made a confession in the terms attributed to. him. Not to mention the fact that the record fails to show any such denial on the part of the prisoner.
[4] Bill No. 6 relates to a confession made by the accused to the sheriff. The sheriff was asked whether he could state the substance of all that was said by this defendant during the course of the alleged confession. And he answered:
“A. Not every word; no, sir.”
And thereupon the counsel asked that the alleged confession be excluded, inasmuch as the witness was unable to give the entire substance. But the witness had not said that he was unable to give the substance of the confession, and his meaning was put in a clear light by the following questions and answers:
“Q. Now, do you know the statement that this accused made to you as his confession?
“A. Yes, sir.
“Q. State it.
“A. Well, he told me that he was with Marceau and Chiasson, and that he had gotten the flour from the car, and I asked him how he had brought it, and he told me he had brought it on his shoulder, one sack at a time, and he told me how he would do it, he would bring a sack a certain distance, then come back for the other.
“Q. Is not that the substance of his confession?
“A. Yes, sir.”
[5, 6] The accused moved in arrest of judgment on the following grounds:
“First. That the bill of information upon which mover’s prosecution is based charges him with no crime or crimes known to, defined, or penalized by the laws of the state of Louisiana.
“Second. That, if the court hold that the said bill of information does charge mover with a crime or crimes defined or penalized by the laws of the state of Louisiana, then he pleads that the bill of information charges him with two separate and distinct offenses, not of the same generic class.
“Third. That Act 47 of the General Assembly of the state of Louisiana of 1890 is unconstitutional, null, and void, in that the said act embraces more than one object, and that the said objects are not expressed in its title.”
*591 The first of these grounds is manifestly without merit, since the first count of the indictment charges the crime denounced by Act 47 of 1890, and the second count charges larceny. Of second ground, counsel, in his brief, contents himself with saying that he “submits” it to the court. Burglary and larceny have always been held to be generic and to be chargeable in the same indictment, provided it be in different counts, and this crime denounced by Act 47 of 1890 is a kind of burglary. Said Act 47 does not contain more than one object. Its object is to legislate relatively to crimes against the property of carriers, and this object is expressed in the title. Nothing is better settled than that the title of the act need not be a synopsis of the contents of the act, but that the constitutional mandate relative to one object and to the expression of this object in the title is obeyed, if the object be indicated in general terms, and if only those things fairly germane to such object be contained in the act.
The judgment appealed from is affirmed.